**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ERNEST LEE HUMPHREY,

        Petitioner,                  CASE NO. 07-cv-11545

v.                                             JUDGE PAUL D. BORMAN
                                               UNITED STATES DISTRICT JUDGE

THOMAS K. BELL,

        Respondent.
_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Petitioner Ernest Lee Humphrey, a state inmate currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan,[1] filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. In his *pro se* pleadings, Petitioner challenges his convictions for (1) first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), (2) assault with intent to commit criminal sexual conduct in the second degree, MICH. COMP. LAWS § 750.520g(2), and (3) unarmed robbery, MICH. COMP. LAWS § 750.530. He was sentenced, as a habitual offender, fourth, to (1) twenty to thirty years in prison for the first-degree home invasion conviction, (2) ten to twenty years in prison for the assault

---

[1] Petitioner was incarcerated at the Carson City Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Saginaw Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

conviction, and (3) ten to twenty years in prison for the unarmed robbery conviction, to be served concurrently. For the reasons stated below, the Court will deny the petition. The Court will also decline to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

I. BACKGROUND

This case arises because of an incident that occurred on June 16, 2001. On that day, a man, identified as Petitioner, broke into the home of seventy-eight-year-old Gladys Stahl. Her husband, Louis, who was eighty-two-years old at the time, was bedridden. Mrs. Stahl confronted Petitioner at the doorway to the their bedroom.

According to Mrs. Stahl's testimony, when she confronted Petitioner, he told her that he wanted money that her son had taken from him. He then took her by the arm, led her around the house, while he pulled out all of the phone jacks. As he was leading her to the basement, she felt what she believed to be his erection against her body. When they returned upstairs, Petitioner exposed his erect penis to her. He then said that he wanted to sit and talk. She refused. Petitioner then led Mrs Stahl back into the bedroom, where he took some jewelry, her weddings rings and a black onyx ring. He eventually exited the home through a window. Mrs Stahl then called her sons, who called the police.

Mrs. Stahl subsequently viewed a lineup which included Petitioner. However, she failed to identify any of the people in the lineup. Nevertheless, after leaving the room, she told the detective that the perpetrator may have been either the "little guy on the end" (a John Webb) or "the one with the glasses" (Petitioner). Later, she indicated to the police that the man with the glasses might have

been the perpetrator but that she did not want to identify someone unless she was sure of his identification. Trial Tr. vol. II, 100, June 19, 2002.

Holly Kissane, who lived with Petitioner at the time of the incident, testified that, on the morning of the crimes, Petitioner was not home, but rather returned at sunrise. Michelle Napier, who lived next door to Petitioner and Kissane, testified that she heard a car drive onto Kissane's driveway between 5:30 and 6:00 a.m. Napier testified that she saw Petitioner exit Kissane's car at that time.

Clarissa Brown, a former girlfriend of Petitioner's and the mother of his child, testified that she received a letter from Petitioner asking her to call his attorney and fabricate an alibi for him regarding the day of the robbery. Petitioner requested that Brown tell his attorney that she saw him with friends that night, that they then ended up spending the night together, and that he dropped her off at home around 5:30 a.m., that morning. Brown testified that she refused Petitioner's request. The letter was admitted into evidence.

Russ Uphold, the detective in this case, testified that he interviewed Mrs. Stahl. He said that she was able to give him a description of the perpetrator sufficient to produce a composite. Based on the composite, he was able to contact Petitioner.

Petitioner was requested to come to the police department and Detective Uphold, after reading Petitioner his rights, conducted an interview. The interview was taped. During the interview, Detective Uphold told Petitioner that he was going to find out "what kind of jewelry" was taken. Trial Tr. vol. II, 75, June 19, 2002. Detective Uphold testified that he never mentioned the fact that rings were taken during the robbery. Nonetheless, in response to his statement, Petitioner told him that he was going to find the stolen ring and whoever tried to frame him for the crimes.

3

After the jury was instructed and had begun deliberating, defense counsel told the trial judge that he had been approached by a local attorney who told him that a juror had discussed the case with him. That attorney was asked to describe their conversation to the trial court:

> I think she did indicate the charges, something to the effect of I thought it was home invasion and CSC or something. At one point she had mentioned something to the effect they wondered how–something about–I wonder how they got him at the trailer park, must have been Robin Glen. I'm not sure of the time frame and I didn't know from that whether it was procedural, whether they had a warrant. I just said, look, I don't want to be rude, but–I can't say anything specifically about the case. I don't want–
>
> And, number one, I don't think that she violated an oath and I don't know as she violated the Court's instructions because it was basically who are the parties and that when she said they wondered how – there must have been some time frame between the incident and when they picked him up. And I just said, I don't think we should – I think this is enough . . . .
>
> THE COURT: Nothing about the individual facts of the case?
>
> [ATTORNEY]: What I do recall about the – she didn't ask me about the implication of anything. I think she had mentioned that it was– I think she said it was an elderly woman, and that's about all I know. And I think there was the fact that it was a home invasion a CSC or something to that effect. I–quite frankly, I don't even know what the charges are.
>
> * * *
>
> [S]he asked, I think, if I knew Mr. White and Mr. – is there a prosecutor Duggan or something? I said, yeah, that's him. I know him. And she basically– we basically– she asked if – about the individuals, the police agencies involved.
> I don't recall, I mean who specifically said what. The conversation just carried on. I thought it was basically about the system. There might have been something about –I asked her, I think, if it was boring. She said, no, it was interesting. But she noted that, you know, some people appeared to be bored in it. I think she referred to the deputies in the back and at times she said I think the judge sometimes looked like he wasn't paying attention but he always responded when there was an objection. I think I commented the judges are trained to do that and that's basically it.

Trial Tr. vol. III, 31-34, June 20, 2002.

4

Defense counsel then requested a mistrial, which the trial judge denied.

After a two-day jury trial, Petitioner was convicted and sentenced as stated.

Following his sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, alleging that the trial court's denial of his motion for a mistrial was an abuse of discretion. On February 5, 2004, the Michigan Court of Appeals affirmed his convictions and sentences. *People v. Humphrey*, No. 243482, 2004 WL 226173 (Mich.Ct.App. Feb. 5, 2004). Subsequently, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, asserting the following claims: (1) the trial court's denial of his motion for a mistrial was an abuse of discretion, (2) the police identification procedure was unduly suggestive, and (3) the prosecutor committed acts of misconduct. On July 29, 2004, the Michigan Supreme Court denied leave "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Humphrey*, 471 Mich. 868, 683 N.W.2d 673 (2004).

On December 13, 2004, Petitioner filed a federal habeas petition, which was assigned to The Honorable Gerald E. Rosen. In that habeas petition, Petitioner challenged his convictions on the grounds asserted in the Michigan Supreme Court. On December 23, 2004, Judge Rosen dismissed the habeas petition without prejudice because it contained claims that had not been properly exhausted with the state courts. Judge Rosen noted that habeas claims II and III were never asserted in the Michigan Court of Appeals but rather were raised for the first time in the Michigan Supreme Court.

Following, on August 12, 2005, Petitioner filed a motion for relief from judgment in the trial court, pursuant to Michigan Court Rules 6.500 *et. seq*. On October 31, 2005, the circuit court issued

5

an order denying Petitioner's motion. *People v. Humphrey*, No. 01-20417-FH-2 (Saginaw County Circuit Court, Oct. 31, 2005).

Petitioner then filed a delayed application for leave to appeal that decision with the Michigan Court of Appeals, raising the following arguments: (1) prosecutorial misconduct, (2) ineffective assistance of trial and appellate counsel, (3) the police identification procedure was suggestive, and (4) he is actually innocent of the crimes.

On September 28, 2006, the Michigan Court of Appeals denied Petitioner's application for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Humphrey*, No. 268884 (Mich.Ct.App. Sept. 28, 2006). Subsequently, on January 4, 2007, the Michigan Supreme Court denied Petitioner's application for leave to appeal the Court of Appeals's decision "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Humphrey*, 477 Mich. 981, 725 N.W.2d 340 (2007).

Petitioner filed this petition on April 5, 2007, challenging his convictions on the following grounds: (1) the trial court in denying his motion for a mistrial abused its discretion, (2) the police identification procedure was unduly suggestive, (3) his trail and appellate counsel were ineffective, (4) he is actually innocent of the crimes, and (5) the prosecutor committed acts of misconduct.

## II. ANALYSIS

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of state-court decisions. Under the AEDPA, a federal court's review of a habeas proceeding is limited. A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

With that standard in mind, the Court proceeds to address Petitioner's claims.

**B.  Claim I–Impartial Juror**

In his first habeas claim, Petitioner asserts that his convictions should be reversed because after the close of proofs one of the jurors discussed the case with an attorney. He argues that the trial court erred in denying the request for a mistrial. The Michigan Court of Appeals considered, but rejected, Petitioner's claim that the juror was tainted by the conversation with the juror's neighbor, who was an attorney, because the claim was completely unsubstantiated. The Court of Appeals stated:

> Defendant was charged in connection with a break-in at the home of an elderly couple. After the jury was instructed and had begun deliberating, defense counsel stated that he had been approached by a local attorney who told him that a juror had discussed the case with him. The attorney told the trial court that on the previous evening his next-door neighbor told him she was sitting on a jury. She identified the attorneys conducting the case, and may have specified the charges against the defendant. The attorney stated that at that point he told the juror that he

7

could not discuss the specifics of the case. He denied that he gave the juror any advice regarding deliberations. The parties agreed that it was not necessary to interview the juror. The trial court denied defendant's motion for a mistrial without explanation.

We review the trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). The denial of a motion for a mistrial based on juror misconduct constitutes an abuse of discretion only if the misconduct was such that it affected the impartiality of the jury or disqualified the jurors from exercising the powers of reason and judgment. *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). A new trial will not be granted unless substantial harm was done to the defendant, even if the misconduct would warrant a rebuke from the trial court. *Id.* Juror misconduct can be demonstrated with evidence pertaining to outside or extraneous influences. *Id.*

Defendant argues that the trial court abused its discretion by denying his motion for a mistrial. We disagree and affirm defendant's convictions. The attorney with whom the juror spoke acknowledged that the juror identified the attorneys conducting the case and may have specified the charges against defendant, but unequivocally denied that he discussed the specifics of the case with the juror or that he gave the juror any advice regarding deliberations. Defendant's contention that the juror's conversation with the attorney tainted the juror and affected the impartiality of the jury is completely unsubstantiated. We cannot conclude that the trial court abused its discretion by denying defendant's motion for a mistrial. *Id.*

*Humphrey*, No. 243482, 2004 WL 226173, at *1-2 ( emphasis added).

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to be tried by impartial and unbiased jurors. *Morgan v. Illinois*, 504 U.S. 719 (1992). The question of whether a trial court seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). On habeas review, the question is "whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." *Patton*, 467 U.S. at 1038; *United States v. Smith*, 748 F.2d 1091, 1094 (6th Cir. 1984).

In this case, the record supports the trial court's conclusion that a mistrial was not required.

8

The juror in question was a neighbor to attorney Hugh LeFevre. While in their respective yards, she told him that she was a juror in a criminal case. LeFevre was brought before the trial court and he described his conversation with the juror. The only "fact" the juror ever told LeFevre was how Petitioner was caught, at which point LeFevre told her that was enough. LeFevre stated that the conversation was about the judicial system and not about how she should decide the case.

The Court concludes that the trial court properly denied Petitioner's motion for a mistrial because Petitioner failed to demonstrate that the juror was tainted or biased as a result of the interaction with her neighbor, or that the impartiality of the juror was negatively impacted. Petitioner points to no specific reason or basis for alleging prejudice other than the circumstance he describes as resulting in improper knowledge and impressions of the juror. The juror merely explained to her neighbor that she was a juror on a criminal case, and that the criminal was caught. The juror never asked the attorney for any information extraneous to the evidence or testimony introduced at trial. Nor did she discuss the facts of the case. Because the juror's ability to act impartially was not impacted, the trial court did not abuse its discretion in denying the motion.

The Court finds that the state appellate courts thoroughly reviewed this claim and correctly concluded that the trial court's decision to deny Petitioner's motion for a mistrial was not an abuse of discretion and that the facts do not suggest any prejudice to Petitioner. The Court of Appeals correctly determined that because the attorney "unequivocally denied that he discussed the specifics of the case with the juror or that he gave the juror any advice regarding deliberations," the trial court did not abuse its discretion in denying Petitioner's motion for mistrial. *Humphrey*, No. 243482,

2004 WL 226173, at *1-2. Notably, defense counsel agreed that the juror should not be brought into court and questioned by the state trial judge.

The state appellate court's adjudications of this claim are neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts, and Petitioner is therefore not entitled to habeas relief on this claim.

C. **Claims II through V–Procedurally Defaulted**

In claim II, Petitioner alleges that the police identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification that it amounted to a denial of due process violating his constitutional rights under both Federal and State law. In claim III, he alleges that the ineffective assistance of trial counsel and the deficient performance of appointed appellate counsel deprived him of his liberty without due process under both State and Federal constitutional law. In claim IV, he alleges that he is unconstitutionally incarcerated because he is actually innocent of the offenses underlying his convictions. And, in claim V, he asserts that he is entitled to a new trial because the prosecutor committed misconduct by introducing improper evidence. Those claims were not raised in Petitioner's direct appeal to the Michigan Court of Appeals but rather were raised for the first time in his application for leave to appeal to the Michigan Supreme Court and in his motion for relief from judgment in the trial court. Following the denial of his post-conviction motion, the Michigan Court of Appeals and the Michigan Supreme Court, the last state courts rendering judgment on the claims, both denied relief on the grounds that Petitioner had failed to demonstrate entitlement to relief under Mich.Ct.R. 6.508(D).

When a state-law default prevents further state consideration of a federal issue, the federal

courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (citing *Seymour v. Walker*, 224 F.3d 542, 554-55 (2000) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

To determine whether Petitioner has been denied relief based on a procedural default, the Court looks to the last "reasoned judgment rejecting the [federal] claim." *Ylst*, 501 U.S. at 803. The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and

11

expressly' relied on [the prisoner's] procedural default in its decision affirming the petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

In *Burroughs v Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit considered the form order used by the state appellate courts here and found that it presented a sufficient explanation that the ruling was based on the failure to comply with a state procedural rule. Where a state court denies relief on independent and adequate state procedural grounds, as the state courts did here, a prisoner may only obtain habeas review of such claims if he can establish "cause and prejudice" or that the failure to review the claims would result in a "fundamental miscarriage of justice." *Strickler v. Greene*, 527 U.S. 263 (1999).

Although Petitioner asserts that appellate counsel did not provide effective assistance given the failure to raise the additional claims in the appeal of right, this argument does not constitute sufficient cause to excuse the procedural default. In order for attorney error to constitute cause, it must rise to the level of ineffective assistance of counsel under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, first, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-91. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. With regard to the performance prong of the inquiry, "[j]udicial scrutiny of counsel's performance must be highly deferential, and "[a] fair

assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Here, appellate counsel did consider the additional issues Petitioner suggested for appeal, but given the court record, counsel chose not to assert those particular issues because the arguments were wholly without merit. The fact that counsel did, however, appeal the issue of juror misconduct demonstrates that counsel probed the proceedings in this case. Appellate counsel was not required to take measures that ultimately would have been pointless. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Even if appellate counsel had raised the additional claims in the appeal of right, Petitioner has failed to demonstrate that the appeal would have been successful.

Considering if appellate counsel was somehow deficient in failing to assert the additional claims in the appeal of right, his inaction did not prejudice Petitioner nor cause Petitioner any injury given that he was able to fully present his claims in his motion for relief from judgment. Petitioner's motion for relief from judgment raised all of the issues Petitioner asserts in this habeas petition. The trial court considered and addressed each claim that was raised in the motion. The issues were also reviewed and denied by the Michigan Court of Appeals and the Michigan Supreme Court. The Court therefore finds that Petitioner received full review and consideration of his arguments, and the arguments were rejected.

Federal case law has repeatedly established that where the state courts have ruled on a petitioner's motion for post-conviction relief, this is an adequate substitute for direct appellate review, and as a result, an attorney's failure to have raised those claims in an appeal of right did not cause injury. *Hollin v. Sowders*, 710 F.2d 264, 265-67 (6th Cir. 1983). Although Petitioner's

motion for relief from judgment was filed *pro per*, federal precedent has also indicated that such circumstances nonetheless afford a defendant an adequate opportunity to present issues that were not raised in a direct appeal. *Drumm v. Warren*, No. 05-CV-40037FL, 2005 WL 3107772, at *4 (E.D. Mich. Nov. 18, 2005).

Finally, as discussed more fully in the arguments that follow, because Petitioner cannot establish that the police identification procedure violated his right to due process, that he is actually innocent of the crimes, or that the prosecutor committed misconduct, he cannot demonstrate that he was prejudiced by appellate counsel's decision.

### 1. Police Identification Procedure

In his motion for relief from judgment, Petitioner claimed that he was illegally seized by the police and then placed in a line-up without his knowledge. At trial, Detective Uphold testified that he requested to speak with Petitioner, and that, after he read Petitioner his rights, Petitioner agreed to speak with him. Petitioner later requested a line-up, therein completely undercutting his argument that he was placed in a line-up without his knowledge.

Petitioner's motion for relief from judgment also asserted that he was denied due process because the in-court identification procedure at the preliminary examination was impermissibly suggestive. Petitioner argued that he was not afforded an evidentiary hearing at trial to determine whether the in-court identification at the preliminary examination was unnecessarily suggestive. The fact that the victim identified Petitioner at the preliminary examination was never introduced at trial.

Moreover, Petitioner never questioned the victim regarding any identification procedure that was utilized and never presented any evidence or specific argument to suggest that the in-court identification of him by the victim at trial was impermissibly suggestive.

Because the identification of Petitioner at the preliminary examination was never presented to the jury, Petitioner cannot demonstrate that, even if that identification process was flawed or unduly suggestive, he was prejudiced by the preliminary examination identification. And assuming *arguendo* that the police line-up was impermissibly suggestive, Petitioner cannot demonstrate any resulting prejudice given that the victim failed to identify anyone at that line-up. Accordingly, the Court concludes that Petitioner was not prejudiced by appellate counsel's failure to raise this claim in his appeal of right and he is not entitled to habeas relief.

2. **Actual Innocence**

In his habeas claim IV, Petitioner asserts that he is actually innocent of the crimes for which he is in custody. However, he does not present any new evidence regarding his actual innocence. Instead, he appears to assert that, because a warrant was never issued against him, nor was he ever arrested for the charged crimes, he must be innocent. Petitioner fails to support that contention with any case law or argument. To the extent he does discuss the evidence against him, he merely restates the arguments made on his behalf at trial, and, in effect seems to suggest that the evidence against him was insufficient. Petitioner argues issues such as the lack of physical evidence linking him to the crimes, the victim's failure to identify him from the police line-up, and whether the victim's in-court identification of him at trial was reliable. All of that information was presented to the jury, and the jury found him guilty.

Because Petitioner fails to present any new, previously undiscovered, evidence pointing to his innocence, his claim of actual innocence must fail. To the extent he challenges the sufficiency of the evidence presented at trial, such a claim is also without merit. Not only did the victim identify Petitioner, but other witnesses established that Petitioner had no alibi. Kissane, who lived with Petitioner, testified that on the morning of the crimes, Petitioner was not home, but rather returned at sunrise. Napier, who lived next door to Petitioner and Kissane, testified that she heard a car drive onto Kissane's driveway between 5:30 and 6:00 a.m., and that she saw Petitioner exit Kissane's car at that time. Brown testified that she received a letter from Petitioner wherein Petitioner asked her to fabricate his alibi by saying she saw him with friends and that he dropped her off at home around 5:30 a.m. Detective Uphold taped the interview he conducted with Petitioner. During the interview, the detective told Petitioner that he was going to find out "what kind of jewelry" was taken. The detective never mentioned the fact that rings were taken during the robbery. Nonetheless, in response to the detective's statement that he would find out what type of jewelry was taken, Petitioner said that he was going to find the stolen ring and whoever tried to frame him for the crimes.

Given the evidence against Petitioner, and his inability to present any new evidence pointing to his actual innocence, Petitioner cannot demonstrate that appellate counsel should have asserted actual innocence during the appeal of right or that his convictions would have been overturned had counsel raised such arguments.

### 3. Prosecutorial Misconduct

In his fifth habeas claim, Petitioner alleges that the trial court failed to adhere to judicial canons when the trial court allowed the prosecution to engage in misconduct. The alleged

misconduct to which Petitioner appears to point concerns the line-up that was conducted by the police. Petitioner claims that, had he not been made readily available for the initial line-up that violated his constitutional rights, the unlawful seizure of his person would not have occurred. He also argues, but fails to support with any reference to the trial record, that the prosecutor not only used tainted evidence, but also intimidated defense witnesses, insinuated that defense counsel did not believe Petitioner was innocent, and expressed to the jurors that his failure to take the stand demonstrated his guilt. Additionally, Petitioner contends that the prosecutor engaged in sandbagging, bolstering credibility, expressing personal opinions and beliefs, and vouching for witnesses.

However, because Petitioner fails to cite to any specific portions of the trial record, or present any specific examples of prosecutorial misconduct, he cannot establish that appellate counsel was ineffective for failing to assert prosecutorial misconduct at trial. Where Petitioner himself is unable to point to even one specific instance of alleged misconduct, he cannot successfully argue that he was prejudiced by appellate counsel's failure to assert such an argument in the appeal of right.

Because Petitioner has failed to demonstrate that the additional appellate arguments would have been successful, he cannot show that he was prejudiced by appellate counsel's representation, or that appellate counsel's alleged ineffectiveness constitutes sufficient cause to excuse the procedural default of habeas claims II through V.

When a petitioner fails to establish cause and prejudice for a procedural default, relief may be granted only if the petitioner can show that refusal to hear his claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495 (1986). The miscarriage of justice

exception is a narrow one, seldom to be used. *Schlup*, 513 U.S. at 321. Such an exception requires a petitioner to support his allegations of constitutional error with new reliable evidence of his actual innocence of the crime for which he is imprisoned. *Schlup*, 513 U.S. at 324. Here, Petitioner fails to present any new evidence to show that he is actually innocent of the crimes for which he is in custody.

This Court cannot grant relief to Petitioner on his procedurally-barred claims because he has failed to demonstrate cause and prejudice and has failed to make a showing of actual innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Schlup*, 513 U.S. at 316. Accordingly, Petitioner's habeas claims II through V are procedurally barred.

### D. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Petitioner's first claim debatable or wrong. Nor would reasonable jurists debate whether the Court's procedural-default ruling was correct or whether Petitioner has stated a valid claim of prosecutorial misconduct. The Court therefore declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Court declines to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 7, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 7, 2010.

S/Denise Goodine
Case Manager